Margaret E. Hodgkinson v. Commissioner.
Hodgkinson v. Commissioner
Docket No. 6116-66.
United States Tax Court
T.C. Memo 1968-176; 1968 Tax Ct. Memo LEXIS 119; 27 T.C.M. (CCH) 865; T.C.M. (RIA) 68176; August 12, 1968. Filed Margaret E. Hodgkinson, pro se, 8820 Van Nuys Blvd., Panorama City, Calif. Allan D. Teplinsky, for the respondent. FAY
Memorandum Opinion FAY, Judge: Respondent determined a deficiency in the Federal income tax of the petitioner for the calendar year 1963 in the amount of $107.05. [1]
The issues presented for determination are (1) whether the petitioner is liable for the payment of self-employment tax for 1963 as a result of engaging in the trade or business of being a babysitter and (2) whether the respondent properly disallowed certain automobile expenses incurred by the petitioner during 1963. All of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Margaret E. Hodgkinson (hereinafter referred to as Margaret) is an individual who resided in Panorama City, California, at the time the petition herein was filed. For the year 1963 Margaret filed her Federal income tax return with the district director of internal revenue at Los Angeles, California. Prior to June of 1963 Margaret's sole source of income had been from wages received while working for Paul B. Stone Co., Inc., and California Water & Telephone Company. In June of 1963 Margaret registered and contracted with the Rock-A-Bye Baby Sitting Service Agency (hereinafter referred to as the agency), agreeing to pay the agency a commission of 12 1/2 percent in return for the agency's agreeing to list her name and procure jobs for her as a babysitter. Margaret was requested by the agency to wear a uniform and be prompt at all times. Although the fees for her services were set by the agency, she collected them herself and was responsible to the agency for its commissions. Margaret's calendar of babysitting jobs was under her sole discretion. Both she and the agency required the job requests to be submitted to the agency, which would either contact her daily or be contacted by her to determine her calendar. Margaret's babysitting was done exclusively at the homes of the requesting parties, either during the daytime or in the evening. At all times she drove her own car to and from her jobs. For each job, in addition to the compensation she received for babysitting services, her clients paid her an undetermined amount for transportation costs. The payments for transporation were included in full in her gross income for 1963. Although during 1963 Margaret established a clientele, she did not babysit for anyone on a daily or weekly basis. Rather, her services were rendered on the basis of the needs of her clients. The care of the children whom Margaret tended was determined in one of two ways: (1) if no instructions were left, the care was within Margaret's discretion or (2) if instructions were given as to the specific needs of the child, such as feeding schedule, type of food, sleeping schedules, bathing requirements for small infants, singing to the child before sleep, and bedtime storytelling, Margaret complied with these instructions. She required every client to leave a number where he or she could be reached in case of an emergency. The cost to Margaret of operating her car for her babysitting activities in 1963 was $568.97. The first issue is whether during 1963 Margaret was self-employed while working as a babysitter and therefore liable for the payment of "self-employment" tax under 866 section 1401 of the Internal Revenue Code of 1954. [2] *121 In the case at bar, as in Terry C. Rosano, 46 T.C. 681 (1966), the positions of the parties appear to be reversed. The respondent contends that Margaret was not an independent contractor but rather an employee of either the parents for whom she sat or the agency. On the other hand, Margaret argues that she was self-employed.[3]
The liability for self-employment tax is imposed where an individual has self-employment income as defined in section 1402. [4]Section 1402 defines self-employment income in such a manner as to exclude, with certain exceptions not here pertinent, compensation received by an individual from the performance of services as an *122 employee within the meaning of section 3121(d). One of the definitions of an employee contained in section 3121(d) is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." *123 The fundamental common law test used to determine if an individual is an employee is whether the party said to be his employer has the right to control the individual's activities, not only as to the results to be accomplished by the work but also as to the means and methods to be used in accomplishing the result. Alsco Storm Windows, Inc. v. United States, 311 F. 2d 341 (C.A. 9, 1962). See generally Seavey, Law of Agency, sec. 84. The evidence establishes that Margaret was subject to the control of the parents for whom she sat. She followed all instructions given by them as to the specific needs of a child. In addition, she required her clients to leave a number where they could be contacted in case of an emergency. This is a further indication that the ultimate control of her activities reposed in her clients. We conclude that during 1963 Margaret was an employee of the parents for whom she sat and thus is not liable for the payment of self-employment tax. Because we have concluded that Margaret was an employee of the parents for whom she sat, we need not consider the *124 respondent's alternative argument that she was an employee of the agency. The second issue is whether respondent properly disallowed certain automobile expenses claimed by Margaret for 1963. These expenses consisted solely of the costs of operating her car between her home and babysitting job sites. It is a well established principle that expenses incurred by a taxpayer in going to and from his residence and his place of work are nondeductible personal expenses rather than deductible business expenses. Commissioner v. Flowers, 326 U.S. 465 (1946); Frank H. Sullivan, 1 B.T.A. 93 (1924); Charles E. Cashman, 9 T.C. 761 (1947); William L. Heuer, Jr., 32 T.C. 947 (1959), affd. per curiam 283 F. 2d 865 (C.A. 5, 1960). See also sections 1.162-2(e) and 1.262-1(b)(5), Income Tax Regs.
Margaret contends that her residence was her place of employment because she received job requests there. She argues from this that her automobile expenses were ordinary and necessary to the conduct of her business and were incurred while carrying *125 it on. She concludes that her automobile expenses are deductible under section 162(a). We think that Heuer, supra, is dispositive of the issue under consideration. Heuer 867 involved a river pilot who had no single site from which he started to work each day. Instead, he began work at many different wharves and docks in the course of a year. He, like Margaret, contended that his residence was his business headquarters because he practiced his profession from there and that thus all of his trips to and from ship locations were incident to the carrying on of his trade or business. Despite this contention, we concluded that his place of employment was the area in which was located the various docks and wharves to which he was subject to being assigned and therefore the cost of travel from his residence to any point of assignment was a commuting expense. On brief, Margaret argues that some of her automobile expenses were incurred in traveling from one babysitting job to another. She also argues that she used her car because no public transportation was available during the hours she had to travel to and from assignments. We need not consider these contentions of Margaret *126 since the record is devoid of any evidence concerning them. Because Margaret failed to demonstrate that the automobile expenses claimed by her for 1963 were incurred while carrying on her trade or business as a babysitter, the respondent's disallowance of such expenses must be sustained. Decision will be entered for the respondent. Footnotes
1. The deficiency was apparently computed as follows: ↩
Disallowance of transportation expenses resulting in additional tax liability of
$135.00
Less: Credit for self-employment tax erroneously paid 27.95
Deficiency determined
2. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
3. Margaret, treating herself as an independent contractor, claimed certain transportation expenses as business expenses and computed and paid the self-employment tax. Respondent, claiming Margaret was an employee, disallowed the transportation expenses as business expenses, determined a deficiency on the basis thereof, and credited the self-employment tax paid by Margaret against the deficiency determined.↩
4. SEC. 1402. DEFINITIONS. (a) Net Earnings From Self-Employment. - The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * (b) Self-Employment Income. - The term "self-employment income" means the net earnings from self-employment derived by an individual * * * during any taxable year; * * * * * * (c) Trade or Business. - The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 * * * except that such term shall not include - * * * (3) the performance of service by an individual as an employee * * * * * * (d) Employee and Wages. - The term "employee" * * * shall have the same meaning as when used in chapter 21 (sec. 3101↩ and following, relating to Federal Insurance Contributions Act).